IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| GWENDOLYN LYNCH, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF EARL MYERS | * | |
| Plaintiff | * | CIVIL NO. JKB-17-1328 |
| v. | * | |
| SSC GLEN BURNIE OPERATING COMPANY, LLC d/b/a GLEN BURNIE HEALTH AND REHABILITATION | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Plaintiff Gwendolyn Lynch brought this negligence and wrongful death action individually and as personal representative of the estate of her step-father Earl Myers, against Defendant SSC Glen Burnie Operating Company d/b/a Glen Burnie Health and Rehabilitation on May 15, 2017. (Compl., ECF No. 1.) Plaintiff amended her complaint on August 28, 2017 (ECF No. 21) and Defendant answered on August 30 (ECF No. 23). Before the Court is Defendant's motion for a protective order permitting *ex parte* contacts with treating health care providers (ECF No. 26). Plaintiff has responded (ECF No. 27), Defendant has replied (ECF No. 30) and the motion is ripe for review. There is no need to hold a hearing to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). In accordance with the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq.*, and its implanting regulations, specifically 45 C.F.R. § 164.512(e), the Court will grant in part and deny in part Defendant's motion and issue a disclosure order authorizing health care providers with protected health

information relevant to this litigation to disclose Mr. Myers' protected health information so long as it is pursuant to written authorization by Plaintiff or in the presence of Plaintiff's counsel. This order will also serve as a qualified protective order and authorize disclosure of Mr. Myers' protected health information pursuant to traditional discovery mechanisms and require the return or destruction of such information obtained in this manner at the end of this litigation. An order setting forth the disposition of Defendant's motion will also accompany this memorandum.

## I. Facts

The following facts are alleged by Plaintiff. In 2015, Earl Myers was admitted to a facility run by the Defendant after receiving treatment at a hospital. (Am. Compl. § III, ¶ 1.) Mr. Myers "developed several serious wounds" while staying at the Defendant's facility, and ultimately died after receiving "extensive wound care and management" at a different hospital. (*Id.* ¶¶ 3-4.) Mr. Myers' step-daughter, Gwendolyn Lynch ("Plaintiff"), was appointed personal representative of Mr. Myers' estate on March 28, 2016. (*Id.* § II, ¶ 5.) She filed the instant action against Defendant as personal representative of Mr. Myers' estate on May 15, 2017, alleging that Defendant was negligent in treating Mr. Myers and caused his death. (*See* Compl.) Before the Court is Defendant's motion for a protective order, filed on October 24, 2017. Defendant seeks an order of the Court to permit it to engage in *ex parte* communications with certain healthcare providers to obtain medical information that is currently protected by HIPAA, as well as to access such information pursuant to traditional discovery methods.

## II. Analysis

HIPAA protects the privacy of medical records, but did not create a federal physician-patient privilege. *See Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925 (7th Cir. 2004). Rather, certain HIPAA regulations, issued pursuant to 42 U.S.C. § 1320d-2, and codified at 45

U.S.C. § 164.512, provide the means by which a party to a litigation can gain access to otherwise private medical records for use in the litigation.

These regulations provide two means by which a litigant can access medical information. *See* 45 C.F.R. § 164.512(e); *Brigham v. Colyer*, Civ. No. 09-2210-JWL-DJW, 2010 WL 2131967, at *2 (D. Kan. May 27, 2010). First, a "covered entity" (which is essentially any health care provider who transmits health information in electronic form) "may disclose protected health information in the course of any judicial . . . proceeding . . . in response to an order of a court . . . provided that the covered entity discloses only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i); see 45 C.F.R. § 160.103 for definition of "covered entity." This type of order, where a court expressly authorizes disclosure, has been referred to as a "disclosure order." *Brigham*, 2010 WL 2131967, at *2.

Second, a covered entity may disclose such information during a judicial proceeding "in response to a subpoena, discovery request, or other lawful process, that is *not* accompanied by an order." 45 C.F.R. § 164.512(e)(1)(ii) (emphasis added). If the information request is not accompanied by an order, one of two conditions must be met: either the covered entity must "receive satisfactory assurance" that the individual who is the subject of the information has been given proper notice, or the covered entity must receive satisfactory assurance that the party seeking the information has made reasonable efforts to "secure a qualified protective order." *Id.* §§ 164.512(e)(1)(ii)(A) and (B). A "qualified protective order" ("QPO") is an order prohibiting parties to a litigation from disclosing private health information outside the litigation and requiring that the parties return or destroy the information at the end of the case. *Id.* § 164.512(e)(1)(v). Essentially, a party seeking protected health information under HIPAA for

use in litigation can ask a court for a disclosure order, permitting a health care provider to disclose such information, and/or can ask a court for a QPO, which serves as a sort of general discovery order, governing how protected information should be handled once obtained pursuant to ordinary discovery procedures. *See Brigham*, 2010 WL 2131967, at *2.

Defendant has asked the Court for a QPO, but in substance is asking for both a QPO and a disclosure order. Defendant's proposed order would require third parties to provide protected health information pursuant to a subpoena, would prohibit disclosure of such information for any purpose other than litigation, and would require that such information be returned or destroyed subsequent to this litigation. (Proposed Order ¶¶ (f), (j), and (k), Mot. Protective Order Ex. 2, ECF No. 26-2.) Thus, this order would follow the requirements for a QPO under the regulations. *See* 45 C.F.R. § 164.512(e)(1)(v). Defendant's proposed order would also permit certain identified health care providers to "review, use or disclose protected health information **without** the written authorization of Plaintiffs [sic] or Plaintiffs' [sic] attorneys." (Proposed Order ¶ (c) (emphasis in the original).) This and other provisions in its proposed order suggest that Defendant is asking the Court for a disclosure order in addition to a QPO. Thus the Court will treat Defendant's motion as one for a QPO and a disclosure order pursuant to 45 C.F.R. § 164.512(e)(1). *See Brigham*, 2010 WL 2131967, at *2 (treating a motion for a QPO as a motion for a disclosure order).

Plaintiff does not seem to oppose Defendant's request for a qualified protective order, as it is defined above. That is, Plaintiff seems to consent to Defendant in engaging in traditional discovery mechanisms to obtain relevant protected health information. (*See* Opp'n at 11-12, ECF No. 27.) Because Plaintiff consents to this discovery, and because the Court finds no reason on its own to deny Defendant access to this information within the boundaries of

traditional discovery mechanisms, the Court will grant Defendant's motion in part. It will issue a QPO that permits Defendant to access protected health information through traditional forms of discovery, and requires Defendant to destroy or return all protected health information at the termination of this litigation. The more challenging question in this case is whether to grant Defendant's request for a disclosure order, permitting *ex parte* communication with specific healthcare providers.

Neither HIPAA nor its regulations prescribe the standard by which a Court will grant a disclosure order. *See Gist v. Yoon*, No. 06-C-04-041751, slip. op. at 7 (Carroll Cty. Cir. Ct. March 22, 2006) (attached to Opp'n at Ex. E, ECF No. 27-5). Courts in this District have not delineated a strict standard either, but after reviewing the cases in this District the Court has reached two conclusions: First, a party seeking a disclosure order permitting *ex parte* communications with health care providers regarding HIPAA-protected information must demonstrate *some* reason that ordinary discovery procedures are not sufficient. *See Lopez-Krist v. Salvagno, et al.*, Civ. No. ELH-12-1116, letter op. at 1 (D. Md., March 1, 2013) (attached to Opp'n as Ex. B, ECF No. 27-2) ("[T]his court has consistently held that such ex parte communications are only permitted if a defendant establishes a 'need' or 'good cause' why normal discovery procedures are insufficient."); *Jeffares v. Kheiri, et al.*, Civ. No. BEL-07-1923, mem. op. at 1 (D. Md. Nov. 19, 2008) (attached to Opp'n as Ex. C, ECF No. 27-3) (concluding that defendants "failed to demonstrate good cause for why traditional discovery methods are unworkable"); *Vongsavang v. Stinson, et al.*, Civ. No. 06-0835, letter op. at 5 (D. Md. Nov. 9, 2006) (attached to Opp'n as Ex. A, ECF No. 27-1) ("While the Court is within its authority in issuing the relief sought by Defendants, this Court will not do so without good reason."); *Washington v. Tramontona*, No. PWG-04-1144, letter op. at 1-2 (D. Md. Oct. 27, 2004) ("There

is no evidence that . . . if contacted through the appropriate discovery vehicles authorized under the rules of civil procedure [plaintiff's] treating physicians would be anything less than candid."). Second, that HIPAA creates an uneven "playing field" where one party may be permitted to engage in *ex parte* communications while the other may not, is generally an insufficient reason to issue a disclosure order. *See Piehl v. Saheta*, Civ. No. CCB-13-254, 2013 WL 2470128, at *2 (D. Md. June 5, 2013); *Lopez-Krist*, *supra*, at 2 ("The desire to 'level the playing field' is an insufficient justification to support defense counsel's request for ex parte communications with plaintiff's physicians."); *Washington*, *supra*, at 1 ("Defendants have offered no justification other than an unparticularized desire to 'level the playing field' [and] [s]uch conclusory statements are insufficient to warrant the relief requested."). The parties to a lawsuit will at times have different degrees of access to fact witnesses – a defendant may have difficulty contacting a witness who is related to the plaintiff, or a plaintiff may have difficulty contacting a witness who worked for a defendant. HIPAA may not create a federal physician-patient privilege but it does create an additional circumstance where there may be an inherent inequity in terms of access to witnesses during litigation.

In addition to these two principles, the Court will add a third: that the possibility of cost-savings and efficiency is also generally an insufficient reason for granting a disclosure order. *See Rebhan v. Barnett*, Civ. No. RDB-05-2119, mem. op. at 3 (D. Md. June 27, 2006) (weighing "Defendants' interests in avoiding the cost of formal discovery . . . against privacy interests . . . and the risk of inadvertent disclosure of confidential information" and finding that a protective order was unwarranted). That is, the possibility that a party will have to expend more resources and time through formal discovery as a result of their inability to engage in *ex parte* informal communication with a witness is not a compelling enough reason, without more, to issue a

disclosure order.  As a Maryland state court that dealt with this issue has noted, "[i]f mere expense and inefficiency were good cause under these statutes, the purpose of these laws could be circumvented in virtually every case."  *See Gist*, *supra*, at 7 (referring to HIPAA and a Maryland state analogue, the Maryland Confidentiality of Medical Records Act).

In summation, for the Court to issue a disclosure order permitting *ex parte* communications with persons disclosing protected information under HIPAA, the party moving for such an order must demonstrate a compelling reason why traditional discovery methods are insufficient.  Furthermore, mere desires to level the playing field or to lower costs and engage in more efficient fact finding, are generally insufficient reasons.  Put differently, a party seeking a disclosure order must demonstrate why standard discovery is insufficient, and that reason cannot simply be the inherent difficulty in contacting witnesses created by HIPAA.  Various forms of litigation – from criminal prosecution to commercial litigation – put parties on an uneven playing field with regard to accessing witnesses (at least).  Congress, by means of an attempt to safeguard private health information, created another area where there is disparity between parties in this regard.  Although HIPAA did not create a federal physician-patient privilege, it "radically changed the landscape of how litigators can conduct informal discovery in cases involving medical treatment." *Law v. Zuckerman*, 307 F. Supp. 2d 705, 711 (D. Md. 2004).  A party must demonstrate a need *beyond* that of any ordinary litigant in a case involving medical treatment, i.e. *beyond* the inconvenience that attends accessing information in a post-HIPAA world.

Defendant here has not demonstrated a need beyond that of any ordinary litigant seeking information in a case involving medical treatment.   Defendant contends that it is on an uneven playing field, and that "fundamental notions of fairness and equal access favor" a disclosure

order here.  (Mot. Protective Order Mem. Supp. 10, ECF No. 26-1.)  Defendant further argues that it, and the judicial system, will have to expend more resources and bear more inefficiencies if it is forced to conduct discovery only through formal means.  And Defendant is not entirely wrong.  It *is* on an uneven playing field, even if Plaintiff, as she avers, has not had any *ex parte* communications with these health care providers herself.  It may have to expend more resources engaging in traditional discovery when it could have weeded out unhelpful witnesses through *ex parte* communication, even though, as will be discussed shortly, the Court *will* allow informal communications with health care providers in the presence of Plaintiff's counsel.  Regardless, these standard assertions of unfairness and inefficiency are unavailing in this District.

There may be a case where the structural unfairness of a plaintiff being able to access a witness while the defendant cannot (outside of formal discovery mechanisms) is *so* unfair, or *so* detrimental to a litigant's defense, that it exceeds that which an ordinary litigant in this context experiences, and the Court might then issue a disclosure order.  There may be a case where the cost to the defendant of proceeding solely through depositions (for example) is *so* great, or *so* concrete that the Court would find it a compelling reason that traditional discovery is insufficient.  But this is not that case.  *See Piehl*, 2013 WL 2470128, at *3 (quoting *Harlan v. Lewis*, 141 F.R.D. 107, 111 (E.D. Ark. 1992) ("Requiring [the defendant] to obtain access to [the plaintiff's] protected medical information through formal discovery proceedings 'strikes an appropriate balance between the parties' ability to obtain all relevant information and the patient's right to have irrelevant medical information remain confidential.'")

As a final note, the Court will nonetheless issue a disclosure order, but of a different sort from that requested by Defendant.  Plaintiff has consented to informal conversations between Defendant and Mr. Myers' health care providers "so long as Plaintiff's counsel is present."

(Opp'n at 12.) Plaintiff, who is the personal representative of Mr. Myers' estate, has therefore consented to the disclosure of protected health information subject to particular conditions, and the Court sees no reason to deny Defendant access to this information in this setting in light of that consent.[1]

### III. *Conclusion*

Defendant has failed to show a compelling need or good cause for a disclosure order permitting it to engage in *ex parte* communication with Mr. Myers' health care providers. Plaintiff did not substantively oppose Defendant's motion for a qualified protective order permitting discovery of protected health information pursuant to formal discovery procedures and HIPAA regulations, and the Court finds no reason not to permit such discovery under such conditions. Accordingly, Defendant's motion for a protective order will be granted in part and denied in part by accompanying order. A separate order will issue authorizing health care providers to disclose protected health information to Defendant in the presence of Plaintiff's counsel, and permitting limited discovery of protected health information.

DATED this 19th day of December, 2017.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge

---

[1] It is not entirely clear that Defendant would *need* such an order authorizing disclosure of information in this context. HIPAA regulations at 45 C.F.R. § 164.512(e)(1)(ii)(A) permit disclosure "in response to a . . . lawful process, that is not accompanied by an order of a court" if the health care provider "receives satisfactory assurance" that the party seeking the information has been given notice of the request. Satisfactory assurance includes a written notice from the party seeking the information that they have notified the individual that they have made such a request and that the individual has not objected. 45 C.F.R. § 164.512(e)(1)(iii). In other words, a letter from Plaintiff authorizing disclosure in the presence of her counsel would seem to suffice. Nevertheless, for the sake of clarity and avoiding any future discovery disputes, the Court will issue a disclosure order authorizing disclosure in the presence of Plaintiff's counsel.