# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

GWENDOLYN LYNCH, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF EARL MYERS

    Plaintiff

    v.

SSC GLEN BURNIE OPERATING
COMPANY, LLC d/b/a GLEN BURNIE
HEALTH AND REHABILITATION

    Defendant.

CIVIL NO. JKB-17-1328

## **MEMORANDUM**

Plaintiff Gwendolyn Lynch brought this action against SSC Glen Burnie Operating Company, LLC d/b/a Glen Burnie Health and Rehabilitation in this Court on May 15, 2017, and she amended her complaint on August 28. (Compl. ECF No. 1; Am. Compl. ECF No. 21.) Defendant answered the amended complaint on August 30 (ECF No. 23), and the case proceeded to discovery. Defendant has now moved to dismiss the case and compel arbitration. (Mot. Compel, ECF No. 36.) Plaintiff has responded in opposition (ECF No. 39) and Defendant has replied (ECF No. 40). No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). The court finds that the purported arbitration agreement is valid, and the Defendant did not waive its right to enforce that agreement. Therefore, the Court will grant Defendant's motion, dismiss the case, and compel arbitration.

I.      *Background[1]*

Plaintiff's step-father, Earl Myers, was admitted to a facility operated by the Defendant ("the facility") on November 27, 2015, after a weeklong stay at a hospital.  (*See* Expert Report Terrance L. Baker, M.D. 2, ECF No. 39-1 ("Baker Report").)   Mr. Myers had been in "apparent good health" but had experienced several falls prior to his hospitalization, "culminating in a rapid functional decline, with clinical deterioration to a stupor."  (Expert Report George Taler, M.D. 1, ECF No. 39-2 ("Taler Report").)  Upon leaving the hospital, he was "unable to care for himself," however, "[o]n admission to the nursing facility, he was noted to be fully alert, [albeit] weak and debilitated."  (*Id.*)  According to Plaintiff "[h]is mental status was always good," and none of the expert reports in this case indicate that Mr. Myers suffered cognitive decline.  (Lynch Dep. 51:13-52:18, ECF No. 40-1; *see* Baker Report; Taler Report.)  Upon admission to the facility, Mr. Myers' cognition was assessed by the Defendant's staff.  (*See* Nursing Admission Data Collection for Earl Myers, ECF No. 39-3.)  Under "Orientation" the assessor checked "Person" and "Time," but did not check "Place" or "Confused."  (*Id.*)  Under "Cognition" the assessor checked "Intact."  (*Id.*)

According to Defendant, as well as Plaintiff in a sworn deposition, Mr. Myers signed an arbitration agreement ("Arbitration Agreement") five days after being admitted to the facility. (*See* Dispute Resolution Program 7, ECF No. 36-4 ("Arb. Agreement"); Lynch Dep. 89:16-18.) Plaintiff stated in her deposition that "Daddy signed it," referring to the Arbitration Agreement, and, when asked if she recognized "[her] Dad's signature," she responded, "Yes."  (Lynch Dep. 89:16-18.)  Under the terms of this agreement, Mr. Myers agreed to arbitrate any dispute arising out of his care at the facility if alleged damages were over $50,000.  (Arb. Agreement at 3.)  The

---

[1]This memorandum is evaluating a motion to compel arbitration and, for reasons explained below, is treated akin to a motion for summary judgment.  The facts recited here are therefore taken from the exhibits presented by the parties and are set forth in a light most favorable to the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

agreement contains a choice of law provision stating "This agreement is governed by the Maryland Uniform Arbitration Act, Md. Code Ann., Cts. And Jud. Proc. §§ 3-201 to 3-234." (*Id.* at 5.)

Mr. Myers was released from the facility on December 17, 2015, but his condition did not improve. (*See* Baker Report at 5-6.) Roughly one week later he signed a "Maryland Medical Order for Life-Sustaining Treatment" ("MOLST"). (MOLST, ECF No. 40-3.) After two more subsequent hospitalizations, Mr. Myers passed away on January 31, 2016. (Baker Report at 6-8.) Plaintiff alleges that Mr. Myers' death was the result of his stay at the facility.

Plaintiff filed the instant action against Defendant on May 15, 2017. (Compl.) Defendant answered her complaint on June 12, 2017. (Ans. to Original Compl., ECF No. 5.) Defendant did not mention the Arbitration Agreement in its answer. (*See id.*) Her original complaint contained a claim for wrongful death, but Plaintiff is not Mr. Myers' biological or adopted child (a necessary prerequisite to bring a wrongful death claim under Maryland law) and she therefore amended her complaint on August 28, 2017, dropping that claim. (Am. Compl.); *see* Md. Code Ann., Cts. & Jud. Proc. § 3-904(a) (defining class of beneficiaries who may recover for wrongful death). Her amended complaint states a claim for negligence, which she is bringing on behalf of Mr. Myers. (*See* Am. Compl. pp. 6-7.) Defendant answered this complaint on August 30, 2017, and again did not raise the issue of arbitration in its answer. (*See* Ans., ECF No. 23.) The case then proceeded to discovery.

After Plaintiff responded to interrogatories and Defendant subpoenaed some documents in anticipation of a deposition, Defendant moved this Court for a "protective order," on October 24, 2017. (Mot. Protective Order, ECF No. 26; *see* Pl.'s Ans.'s to Interrogs., ECF No. 39-7; Subpoenas, ECF No. 39-9.) On December 14, 2017 Defendant took Plaintiff's deposition. (*See*

Lynch Dep.) On December 19, 2017, the Court issued an order granting in part and denying in part Defendant's motion for a "protective order." (ECF No. 32.) Essentially, Defendant had requested a "disclosure order" permitting qualified health care providers to speak with Defendant *ex parte*; discussions which would ordinarily be in violation of the Health Insurance Portability and Accountability Act. (*See* Mem., ECF No. 31.) The Court denied Defendant's request, but granted the motion in part and issued a "Disclosure and Qualified Protective Order" that permitted Defendant to access Mr. Myers' protected health information via subpoena. (*See* ECF No. 33.) Defendant remained free to interview Mr. Myers' health care providers with the authorization of Plaintiff or in the presence of Plaintiff's attorneys.

Roughly three weeks after the Court's order, on January 12, 2018, Defendant informed Plaintiff that it was "electing to enforce the arbitration agreement," and requested that Plaintiff dismiss this lawsuit. (Arbitration Letter, ECF No. 36-5.) Plaintiff did not voluntarily dismiss the suit, and Defendant filed a motion to compel arbitration on February 9, 2018. (Mot. Compel, ECF No. 36.) Plaintiff responded in opposition on February 23, 2018 (ECF No. 39) and Defendant replied on March 2, 2018 (ECF No. 40). This motion is therefore ripe for consideration.

II. ***Applicable Law and Standard***

Below the seemingly clear surface of this case lies a rather murky question of choice of law. The parties seem to believe that the Federal Arbitration Act ("FAA"), and thus Federal law interpreting it, apply to this case.[2] And at first blush they appear to be correct. Any contract

---

[2] Defendant clearly asserts as much. Plaintiff seems to do so as well, discussing the FAA in her standard of review section, but then adding, unhelpfully, that "it is also important to note that the alleged arbitration agreement contains [a] choice of law provision[]" that chooses Maryland law. (Opp'n at 6-7.) This is unhelpful because Plaintiff does not explain *why* this choice of law provision is "important," and immediately retreats from any suggestion that Maryland law governs this case in her next sentence, stating that "[r]egardless of the choice of law provision, federal law is clear . . . ."

"evidencing a transaction involving [interstate] commerce," is within the scope of the FAA, and the contract here evidences such a transaction. 9 U.S.C. § 2; *cf. GGNSC Louisville St. Matthews v. Madison*, 254 F. Supp. 3d 901, 910 (W.D. Ky. 2017) (noting that "[i]t blinks reality to say that, in the aggregate, the nursing home industry does not affect interstate commerce," and finding that, in part because a nursing home plaintiff did business in multiple states, contract between nursing home resident and nursing home was a "transaction involving interstate commerce."). Even when a contract with an arbitration provision contains a choice of law provision that chooses non-Federal law, the presumption is that Federal law will still apply to the question of arbitrability. *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 n.7 (4th Cir. 2012) (citing *Porter Hayden Co. v. Century Indem. Co.*, 136 F.3d 380, 382 (4th Cir. 1998)).

The contract at issue here, however, is not a contract that *contains* an arbitration clause; it is itself a contract to arbitrate, and the choice of law clause does not broadly select "Maryland law," but rather explains that the arbitration contract will be governed by the Maryland Uniform Arbitration Act ("MUAA") specifically. It would seem, then, that the contracting parties chose Maryland law *as the law of arbitrability*, and not simply as the law to be applied within arbitration. The Fourth Circuit has not addressed the issue of whether parties can select the law governing the arbitrability of a contract, but other circuits have and generally agree that, "[c]learly, they can." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 141 F.3d 243, 247 (5th Cir. 1996); *see Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 50-51 (2d Cir. 2004).

So, despite the apparent agreement of the parties, it is not entirely clear that the FAA applies to this case. Luckily, the nature of the issues presented renders the choice of law question largely unimportant. Plaintiff challenges the arbitration agreement on two grounds: 1)

5

that it was not validly entered into by Mr. Myers, and 2) that Defendant has waived its right to enforce its contractual right to arbitrate. Even under the FAA, both issues are decided under state law. *See Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001) ("To determine whether the parties agreed to arbitrate [under the FAA], courts apply state law principles governing contract formation."); *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir. 2008) ("[C]ontract-based challenges [such as waiver] are governed by applicable state law."). Therefore, the outcome of this case would be the same whether the contract was considered under the FAA or the MUAA. Still, the Court will proceed under the presumption that the contract to arbitrate is governed by the MUAA, as its terms clearly state.

"When a party moves to compel arbitration and the validity of the purported arbitration agreement between the parties is disputed, the motion is treated as one for summary judgment." *Roach v. Navient Solutions, Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015) (quoting *Whitten v. Apria Healthcare Grp., Inc.*, Civ. No. PWG-14-3193, 2015 WL 2227928, at *2 (D. Md. May 11, 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. And "[n]o genuine issue of material fact

exists if the opposing party fails to make a sufficient showing on an essential element of her case as to which she would have the burden of proof" at trial. *Roach*, 165 F. Supp. 3d at 347.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1).

### III. *Analysis*

As explained above, Plaintiff opposes Defendant's motion to compel arbitration on two grounds: 1) that the Arbitration Agreement is not a valid contract and 2) even if the Arbitration Agreement is valid, Defendant waived its right to compel arbitration under that contract. The Court will address each issue in turn.

#### a. *Validity*

"Maryland's Arbitration Act expresses the legislative policy favoring enforcement of agreements to arbitrate . . . . by strictly confining the function of the court in suits to compel arbitration to the resolution of a single issue—is there an agreement to arbitrate the subject matter of a particular dispute." *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 664 (Md. 2003) (internal quotation marks, citations, and alterations omitted); *see also Commonwealth Equity Servs., Inc. v. Messick*, 831 A.2d 1144, 1151 (Md. Ct. Spec. App. 2003) (noting that both Federal and Maryland state law favor the enforcement of arbitration agreements). This "single issue" of whether there is an agreement to arbitrate is a matter of contract law. *See Charles J. Frank, Inc. v. Associated Jewish Charities of Baltimore, Inc.*, 450 A.2d 1304, 1306 (Md. 1982). Maryland law "presumes every person to be capable of making a

7

valid deed or contract.'" *Cannon v. Cannon*, 865 A.2d 563, 573 (Md. 2005) (alteration omitted) (quoting *Williams v. Moran*, 236 A.2d 274, 278 (Md. 1967)). "When a party attacks the validity of a contract as invalid under fraud, duress, coercion, mistake, undue influence, or incompetence, normally that party bears the burden of proof." *Id.*

Plaintiff argues that Defendant "offers no admissible evidence which authenticates the alleged arbitration agreement" nor any evidence "that the document was actually executed by Mr. Myers." (Opp'n 8, ECF No. 39.) But Defendant *has* presented such evidence; namely, it has presented the arbitration agreement, signed by both parties. Plaintiff herself has testified that the signature on the document is her father's signature. (*See* Lynch Dep. 89:16-18.)

Plaintiff further argues that Defendant has not offered evidence that "at the time the document was allegedly executed . . . Mr. Myers was sufficiently healthy to comprehend and voluntarily agree to the terms of the alleged arbitration agreement." (Opp'n at 8.) Plaintiff's argument regarding validity seems to rest on the proposition that Defendant not only needs to put forth a signed arbitration agreement; it needs to affirmatively refute every possible attack on that agreement. (*See id.* at 8-9.) But that is not so. The law presumes that Mr. Myers was capable of making a valid contract, and the burden is on Plaintiff to demonstrate mistake or incompetence. *See Cannon*, 865 A.2d at 573.

Plaintiff has not met that burden. According to Plaintiff's expert reports, Mr. Myers' admission documents, and Plaintiff's own testimony, Mr. Myers was not cognitively impaired when he was admitted to the facility. Mr. Myers signed the MOLST document after he was released from the facility, and Plaintiff has not challenged his informed consent to do so. So, the evidence demonstrates that Mr. Myers was cognitively alert when he entered and left the facility, and Plaintiff presents no evidence that when he signed the Arbitration Agreement he had

8

experienced some momentary precipitous dip in cognitive ability. The only evidence that Mr. Myers' mental state was impaired is that on his admission document, the assessor did not check the box for "Place" under "Orientation," suggesting, perhaps, that Mr. Myers was not oriented to his surroundings. But the assessor also did not check the box for "Confused" and *did* check the box for "Intact" under "Cognition." The absence of a check mark next to "Place" in this document cannot do the work that Plaintiff asks it to do. It cannot, on its own, establish that Mr. Myers was incapable of making a valid contract. Plaintiff has failed to "make a sufficient showing on an essential element of her case as to which she would have the burden of proof," and therefore "[n]o genuine issue of material fact exists," with regard to the validity of the Arbitration Agreement. *See Roach*, 165 F. Supp. 3d at 347.

  b. ***Waiver***

Waiver is matter of contract law. *Frank*, 450 A.2d at 1306.[3] It is "the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances . . . . Acts relied upon as constituting a waiver of the provisions of a contract must be inconsistent with an intention to insist upon enforcing such provisions." *Stauffer Const. Co., Inc. v. Bd. of Educ. of Montgomery Cty.*, 460 A.2d 609, 614 (Md. Ct. Spec. App. 1983) (internal quotation marks and alteration omitted). "The intention to waive must be clearly established and will not be inferred

---

[3] "Default," however, may be a matter of Federal law. These terms are often used interchangeably, but "default" is in fact a statutory term in the FAA. *See* 9 U.S.C. § 3. The Court highlights this often insignificant semantic difference because the waiver/default distinction has some import here. The Fourth Circuit has been clear that there must "be actual prejudice to the party opposing arbitration" for a Court to find that the party seeking arbitration defaulted on its right under the FAA. *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985). But to show waiver under Maryland law, the opposing party "does not have to demonstrate that he will suffer prejudice if the arbitration clause is enforced." *Cain v. Midland Funding, LLC*, 156 A.3d 807, 820 (Md. 2017). Plaintiff here does not make any argument that it will suffer prejudice if the Arbitration Agreement is enforced and the Court does not find that Plaintiff will be prejudiced if the Arbitration Agreement is enforced. But because the Court analyzes Plaintiff's argument as one of waiver under Maryland law, and not default under Federal law, Plaintiff's failure to argue prejudice and the Court's finding in that regard is unimportant.

from equivocal acts or language." *Frank*, 450 A.2d at 1307. There is no "'bright-line' test for determining waiver." *The Redemptorists v. Coulthard Servs., Inc.*, 801 A.2d 1104, 1116 (Md. Ct. Spec. App. 2002). Rather, "[w]hether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Frank*, 450 A.2d at 1307.

Courts consider a number of factors when determining whether a party has waived its contractual right to arbitrate, including whether the party raised its right as an affirmative defense in its answer, the party's delay in asserting its right, to what degree the party engaged in discovery, or motions practice, and whether the assertion of the right only came after an adverse decision by the court. *See Commonwealth*, 831 A.2d at 1152-58 (discussing several factors);[4] *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) (failure to raise as affirmative defense); *Horsey v. Horsey*, 620 A.2d 305, 313 (Md. 1993) (considering delay and participation in litigation); *Frank*, 450 A.2d at 1307 (same); *The Redemptorists*, 801 A.2d at 1118-20 (same); *RTKL Assocs., Inc. v. Four Villages Ltd. P'ship*, 620 A.2d 351, 355 (Md. Ct. Spec. App. 1993) (considering delay). But the Court will boil those factors down to two: 1) the timing of Defendant's assertion of its right to arbitrate, and 2) the degree of participation in this

---

[4] Plaintiff puts forth five factors that the Court should consider in determining waiver, stating that "[t]he Court of Special Appeals of Maryland considers the following factors when determining waiver of the right to arbitrate: (1) failure to raise the right of arbitration in the answer to the complaint; (2) delay in raising the election to arbitrate; (3) participation in discovery in the court proceeding; (4) using discovery mechanisms in the court proceeding which are not available in arbitration; and (5) electing to pursue arbitration after an adverse ruling in the court proceeding." Plaintiff seems to read *Commonwealth* as laying out five factors that Maryland courts should, or at least regularly do consider. (Opp'n at 10-11.) But *Commonwealth* does not exactly stand for that proposition. In that case the Court of Special Appeals was asked to review a decision of a trial court that happened to consider (at least) these five aspects of the case. The court found that it was proper for the trial to court to consider them, and found that the trial court did not abuse its discretion in finding that, based on (at least) these five aspects of the case, the defendant had waived its right to compel arbitration. So, it is not as though the Court, applying Maryland law, *must* apply these factors. It is not even the case that if the factors came out entirely the same in this case as in *Commonwealth* the Court must deny Defendant's motion, as *Commonwealth* only held that the trial court did not abuse its discretion.

forum. Essentially, the question is: did the party now asserting its right to arbitrate so commit to the judicial forum that it clearly and unequivocally waived that right?

*The timing of Defendant's assertion of its right to arbitrate.* Plaintiff points to Defendant's failure to raise the Arbitration Agreement as an affirmative defense in its answer, as well as its general delay in moving to compel, as evidence that Defendant waived its right to pursue arbitration. "[T]he fact that a party desiring arbitration did not assert the affirmative defense of arbitration in its answer is certainly relevant to a court's waiver consideration." *Commonwealth*, 831 A.2d at 1154. But a party does not necessarily *know* that it intends to arbitrate when it answers a complaint. While relevant, this factor, then, is not particularly weighty. *Cf. Fisher*, 791 F.2d at 698 ("[T]he bare fact that [a defendant] failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration."). In *Commonwealth*, the appellants did not simply fail to raise arbitration as an affirmative defense: they "filed their petitions to compel arbitration *on the eve of trial*." 831 A.2d at 1154 (emphasis added).

Delay is relevant as well, but is likely not sufficient on its own to prove waiver. *See The Redemptorists*, 801 A.2d at 1118-19. In *Commonwealth*, the appellants waited thirteen months to petition the court to enforce arbitration, and the trial court found that because of this delay and a number of other factors, the appellant had waived its right to seek arbitration. 831 A.2d at 1154. In another case, the party seeking arbitration "waited five years before demanding arbitration," and the court found that the party "had waived its right to do so." *The Redemptorists*, 801 A.2d at 1117 (discussing *RTKL Assocs.*, 620 A.2d at 355). In *The Redemptorists*, the party seeking arbitration waited two-and-a-half years after the termination of a contract (which gave rise to the dispute) before moving to compel arbitration. *Id.* at 1118. The

11

court found that such delay did not constitute waiver. *Id.* at 1119. Only six months had passed between the "filing of the initial complaint and the filing of the petition to order arbitration," and "the major portion" of that time "was spent clarifying the scope of the complaint." *Id.*

The Court finds that Defendant's failure to raise the Arbitration agreement in its answer is a relevant, but not particularly weighty factor. Failing to raise arbitration at this early stage evinces a desire to proceed, *at least initially*, in a court. But a party may initially desire to proceed in a court and then later assert its right to arbitrate. It is acceptable for Defendant to have answered the complaint in order to avoid a default while still considering whether to arbitrate, or even whether Plaintiff's claim was arbitrable. It is not as though Defendant first asserted its right to arbitrate "on the eve of trial." *See Commonwealth*, 831 A.2d at 1154.

Defendant did not, in fact, engage in much delay in this case at all. Defendant argues that Plaintiff's original complaint did not present an arbitrable issue, as Plaintiff asserted a wrongful death claim on her own behalf. Therefore, the delay in this case is measured from the date of the amended complaint on August 28, 2017.[5] Defendant first notified Plaintiff of its intent to arbitrate on January 12, 2018, only four-and-a-half months later. As in *The Redemptorists*, much of the time between the initiation of this action and Defendant's motion was not really "delay," but rather was time spent "clarifying the scope of the complaint." 801 A.2d at 1119. The actual, roughly four-and-a-half months of delay was significantly less than the five years of delay in *RTKL Associates*, and less than a quarter of the delay in *Commonwealth*. Defendant's failure to raise arbitration in its answer to Plaintiff's amended complaint, or in the months following does not evince a clear desire to waive its right to seek arbitration.

---

[5] The Court makes no finding here as to whether the initial claim was, in fact, arbitrable. It is enough that Defendant asserts that it *thought* the initial claim was arbitrable and Plaintiff does not challenge that fact, nor does she challenge the actual non-arbitrability of that claim.

*Degree of participation in the judicial proceeding*. As the cases cited thus far demonstrate, *some* degree of participation in the judicial proceeding is acceptable before a party will be deemed to have waived its right to arbitrate. So, up to a point a party can proceed on two tracks: on one track it may engage in a judicial proceeding such that it will not be prejudiced if it ultimately opts for, or is forced into, the judicial forum; on the other it may consider whether to pursue arbitration. The point at which a party must choose a track is variable and fact specific, but what a party may *not* do is rely on its contractual right to arbitrate as a parachute. It may not pursue litigation in a court and then, when the going gets rough, bail to arbitration and drag the opposing party with it.

By the time the parties have reached trial or a similar disposition of the merits of the case, it is clear what track they are on, and they may not, generally, at that point assert a right to arbitrate. Maryland courts have found that parties waived their right to pursue arbitration when they asserted that right on the eve of trial, after settlement, or after trial. *See Commonwealth*, 831 A.2d at 1154 (eve of trial); *Frank*, A.2d at 1307 (after settlement); *Horsey*, 620 A.2d at 313-14 (after trial). Similarly, engagement in court procedure may demonstrate that a party has chosen the courtroom track. Extensive use of discovery that would not be available in arbitration has, along with other factors, been found to demonstrate a waiver of a right to arbitrate. *Commonwealth*, 831 A.2d at 1155-56. Finally, the Court should consider the tactics of the movant. That is, does it seem as though the party seeking arbitration gambled on the judicial forum and lost, or does the timing more likely reflect an acceptably tardy decision to pursue arbitration? *See id.* at 1156. In *Commonwealth* for example, the non-movants argued, successfully, that the movant had only moved to compel arbitration after a decision in a related case hadn't gone its way on the issue of successor liability. *Id.*

Here, Defendant did not evince an unequivocal desire to choose the courtroom track. It first asserted an intention to arbitrate not after trial, or on its eve, but a few months into discovery. Defendant engaged in that discovery process, and may have benefited somewhat from that engagement, considering that certain discovery mechanisms available to it in this forum are likely not available in an arbitral forum. However, the Court is not greatly troubled by this fact. The availability or not of particular discovery mechanisms is not, in the Court's eyes, as important as the information that the Defendant received. Plaintiff argues, for example, that Defendant would likely not be able to conduct depositions in arbitration, but it is unclear that, by deposing Plaintiff, Defendant was able to access significant information that it would not have had access to in arbitration. Furthermore, Plaintiff's deposition provided information that would help the Defendant determine whether it should assert its right to arbitrate – namely Plaintiff's own statements regarding Mr. Myers' mental state and his signature on the Arbitration Agreement. Thus, it makes some sense to take that deposition before moving to compel arbitration. In *Commonwealth*, the entire discovery process had concluded before the movant asserted its right to arbitrate. Defendant did not get the benefit of the Court's process to such a degree here.

Finally, the Court notes that this motion comes after an adverse ruling against Defendant. That ruling, however, did not go to the merits of the case. *See The Redemptorists*, 801 A.2d at 1119 (noting that movant's earlier decision to bring a motion to dismiss for lack of jurisdiction did not evince a desire to "wholeheartedly engage in the judicial form" as it was not on the merits). It was not a ruling on the Plaintiff's theory of liability, as in *Commonwealth*. It was not a motion to dismiss or for summary judgment. *Cf. Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991) (noting that there is substantive prejudice to the opposing party when "a party loses a

motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration"). It was a fairly routine discovery fight that resulted in Defendant potentially having a harder time accessing certain medical information in a certain way. It did not so affect the field of battle in this case that Defendant's motion now seems like an attempt to move the battle to a more favorable pitch.

Ultimately, the relatively short delay, relatively slight participation in the judicial forum, and general posture of the case at this stage suggest to this Court that Defendant was not deliberately playing the field; i.e., was not getting what it could from this Court knowing that it would move on to arbitration at the first sign of trouble. And a suggestion is enough. Maryland law strongly favors arbitration, and thus the Court will not find that a party has waived its contractual right to arbitrate unless its intention to waive is "clearly established." *Frank*, 450 A.2d at 1307. The Court does not find that Defendant intended to waive, and the facts that do (somewhat) suggest such an intention do not "clearly establish" one.

## IV.  *Conclusion*

The Arbitration Agreement is valid, and there is no evidence that Mr. Myers was unable to enter that contract when he did so. Furthermore, the Court finds that Defendant did not waive its right to enforce the arbitration agreement. Therefore, the Court will grant Defendant's motion to compel arbitration, and dismiss the case.

DATED this 17th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge